## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

LOUIS A. WILSON,

    Defendant.

**Criminal No. 96-319-01 (CKK)**
**(Civil Action No. 12-852)**

## MEMORANDUM OPINION
(October 7, 2019)

Presently before the Court is Defendant Louis A. Wilson's [328] Motion to Vacate, Set

Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, and his [351] Motion to Amend and/or

Supplement [his § 2255 Motion] pursuant to Fed. R. Civil P. [ ] 15(a) and (c).[1] Defendant Louis

A. Wilson ("Defendant" or "Mr. Wilson"), who is proceeding *pro se*, alleges that he received

ineffective assistance of counsel from both his trial counsel and appellate counsel when they failed

to challenge: (1) the trial court's violation of the Defendant's right to counsel of choice in violation

of the Sixth Amendment; (2) Defendant's convictions and sentences on two murder counts that

arose from the murder of one individual on Double Jeopardy grounds; (3) the suppression of

information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), pertaining to a murder other

than the murder for which Defendant was convicted; (4) the allegedly unauthorized presence of

Assistant United States Attorney Robert Mueller before the grand jury; and (5) jurisdiction of the

trial court to try his case. Defendant alleges further that he is "actually innocent." Defendant

requests that the Court reconsider and reduce his sentence, and he requests an evidentiary hearing

---

[1] Louis Wilson is the defendant in the underlying criminal case and the petitioner with regard to the motions he filed. To avoid confusion, throughout this Memorandum Opinion, the Court will refer to Louis Wilson as "Defendant" or "Mr. Wilson."

to resolve the issues raised in his motions. The United States of America (the "Government") has filed its oppositions to the Defendant's Motion to Vacate and Defendant's Motion to Amend and/or Supplement, and the Defendant has filed replies to both motions, which are ripe for this Court's review. Upon a searching review of the parties' submissions,[2] the relevant authorities, and the record in this case, the Court finds that Defendant is not entitled to the requested relief. Accordingly, the Court shall GRANT Defendant's [351] Motion to Amend and/or Supplement his Motion to Vacate and DENY his [328] Motion to Vacate, Set Aside, or Correct Sentence. A separate Order accompanies this Memorandum Opinion.

## I. BACKGROUND

### A. Factual Background[3]

Defendant's [328] Motion to Vacate, Set Aside, or Correct Sentence ("Def.'s Mot. to Vacate") arises out of a case involving the murder of a Government witness scheduled to testify in the trial of James "Toe" Wilson, who was charged with robbing a United States Post Office. The Government's case against James Wilson was based primarily on information obtained by a witness, decedent Leroy Copeland, who had taped a conversation with James Wilson at the Lorton Reformatory ("the Lorton conversation") on July 28, 1995. The Government turned over copies of the tape and transcript of the Lorton conversation, which revealed Leroy Copeland's identity,

---

[2] Def.'s Mot. to Vacate Sentence, ECF No. 328; Govt.'s Opp'n to Mot. to Vacate, ECF No. 332; Def.'s Reply on Mot. to Vacate, ECF No. 333; June 25, 2015 Order (directing supplemental briefing on procedural default rule), ECF No. 340 Govt.'s Supplemental Br., ECF No. 341; Def.'s Resp. to Govt.'s Supplemental Br., ECF No. 342; August 3, 2015 Order (directing briefing on the merits), ECF No. 343; Govt. Second Opp'n to Def's Mot. to Vacate, ECF No. 348; Def.'s Reply to Govt's Second Opp'n, ECF No. 349; Def.'s Mot. to Am. and/or Supp. to Mot. to Vacate (adding actual innocence claim), ECF No. 351, Govt.'s Resp. to Def's Mot. to Am. and/or Supp., ECF No. 360, Def's Reply on Mot. to Am. and/or Supp., ECF No. 362.

[3] The Factual Background section is copied, with adaptations, from this Court's [281] September 12, 2005 Memorandum Opinion in *United States v. Wilson*, No. 96-319-01 (CKK), 2005 WL 6293747, at *1 (D.D.C. Sept. 12, 2005). References to the trial transcripts are omitted.

to James Wilson's attorney, Steven Jacoby. This was done on the condition that Attorney Jacoby would not share copies of the tape and transcript with anyone without the Government's prior permission. On March 20, 1996—shortly before the March 26, 1996 trial date—James Wilson's attorney met with James's wife and brother, Ralph Wilson, to discuss evidence against James. During the meeting, Attorney Jacoby alerted the family members to Leroy Copeland's role in the case against James Wilson by playing portions of the Lorton conversation between Leroy Copeland and James Wilson. On the evening of March 25, 1996, Leroy Copeland was shot and killed at 5th and O Streets, N.W., in Washington, D.C.

**B. Procedural History**

On March 21, 1997, after a jury trial before the Honorable Norma Holloway Johnson, Defendant Louis A. Wilson ("Defendant"), brother of James Wilson, and codefendants Ralph Wilson and Marcellus Judd were convicted of conspiracy to kill a witness (18 U.S.C. § 371) (Count One), killing a witness (18 U.S.C. § 1512(a)(1)(A)) (Count Two), retaliating against a witness (18 U.S.C. § 1513(a)(1)(B) & (2)) (Count Four), first-degree murder while armed (D.C. Code §§ 22-2401, 3202) (Count Six), two counts of using a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)) (Counts Three and Five), and possession of a firearm during a crime of violence (D.C. Code § 22-3204(b)) (Count Seven). Jury Verdict, ECF No. [146]. On September 10, 1997, Defendant was sentenced to life imprisonment plus two consecutive five-year terms of

incarceration.[4]  After a timely notice of appeal was filed,[5] new counsel was appointed to represent Defendant on appeal.  Govt.'s Opp'n, to Def.'s Mot. to Vacate, ECF No. 332, at 2-3.

On November 20, 1998, the Court of Appeals for the District of Columbia Circuit affirmed most but not all of Defendant's convictions. The court found that Defendant's conduct did not support two convictions for use of a firearm. Govt.'s Opp'n, ECF No. 332, at 3.  Accordingly, the Court of Appeals vacated one of Defendant's two § 924(c) convictions for use of a firearm. *See United States v. Wilson*, 160 F.3d 732, 750 (D.C. Cir. 1998), *cert. denied*, 528 U.S. 828 (1999).[6]

On September 29, 2000, Defendant filed a [230] Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, followed by two supplements to the motion, which were filed on March 1, 2001 and January 20, 2004.  On January 20, 2004, Defendant also moved to adopt the post-trial arguments filed by co-defendant Ralph Wilson.  Def.'s Mot. for Miscellaneous Relief, ECF No. 260.

---

[4] Defendant was sentenced as follows: (1) Count One – incarceration for a term of sixty months to be followed by three years supervised release; (2) Count Two – life imprisonment to be followed by five years of supervised release to run concurrently with the sentence imposed on Count One; (3) Count Three – sixty months incarceration to run consecutively to the sentences of incarceration on Counts One and Two, to be followed by three years supervised release to run concurrently to the terms of supervised release imposed on Counts One and Two; (4) Count Four – life imprisonment to be followed by five years of supervised release to run concurrently with Counts One, Two, and Three; (5) Count Five – incarceration for sixty months to run consecutively to the terms of incarceration imposed on Counts One through Four, to be followed by three years supervised release to run concurrently to the terms of supervised release imposed on Counts One through Four; (6) Count Six – incarceration for a term of thirty years to life imprisonment to run concurrently with Counts One through Five; and (7) Count Seven – incarceration for not less than five years or more than fifteen years to run concurrently with the sentences imposed on Counts One through Six. Govt.'s Opp'n, ECF No. 332, at 2-3 n.1.

[5] Def.'s Notice of Appeal, ECF No. 198.

[6] In the instant case, Petitioner was tried and sentenced by the Honorable Chief Judge Norma Holloway Johnson before she retired, and the case was reassigned later to the undersigned. The trial court did not amend Defendant's Judgment pursuant to the decision by the appellate court. It was not until after this case was transferred to the undersigned that the Judgment was amended.

On September 14, 2005, this Court entered an order,[7] following a memorandum opinion two days prior,[8] denying Defendant's [230] 28 U.S.C. § 2255 motion, which alleged that: (1) his conviction was based on perjured testimony; (2) the Government did not disclose exculpatory information that was in its possession prior to trial, in violation of its *Brady* obligations; (3) Defendant's confrontation rights were violated at trial (a confrontation claim adopted from co-defendant Ralph Wilson); and (4) Defendant received ineffective assistance of counsel at trial in violation of the fundamental guarantees of the Sixth Amendment.[9] In making a determination that Defendant's Fifth Amendment perjured testimony, *Brady*, and Confrontation Clause claims were procedurally barred, this Court applied the principle that "a prisoner may not raise an objection in a Section 2255 motion that could have been contested on direct appeal unless he can first demonstrate cause for the procedural default and then establish resulting prejudice." September 12, 2005 Memorandum Opinion, ECF No. 281, at 6. The Court made further alternative findings as to the Defendant's *Brady* and Confrontation Clause claims. The Court analyzed the Defendant's claims based on ineffective assistance of counsel under the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984).

On October 18, 2005, Defendant filed an appeal of this Court's denial of his Section 2255 motion. Def.'s Notice of Appeal, ECF No. 285. On May 3, 2007, the United States Court of Appeals for the D.C. Circuit affirmed the summary denial of Defendant's [230] 28 U.S.C. § 2255

---

[7] Order on Def.'s Mot. to Vacate Sentence, ECF No. 282.

[8] Mem. Op., ECF No. 281.

[9] With regard to the ineffective assistance of counsel claim, Defendant asserted that trial counsel failed to: (1) call an alibi witness; (2) move for a mistrial or continuance to investigate allegedly exculpatory statements; (3) advise and prepare Defendant to testify at trial; (4) seek a severance in order to call co-defendant Marcellus Judd to testify at trial; (5) object to the trial court's allegedly insufficient jury instruction for his Section 1512(a)(1)(A) charge. Memorandum Opinion, ECF No. 281, at 6.

motion. *United States v. Wilson*, 219 F. App'x. 5 (D.C. Cir. 2007).

On July 22, 2010, Defendant filed a [296] Motion for Entry of an Amended Judgment in a Criminal Case to reflect the D.C. Circuit's reversal of his conviction on the charge of using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). On November 23, 2010, pursuant to the decision issued by the Court of Appeals on November 20, 1998, directing that one of Defendant's 18 U.S.C. § 924(c) convictions be vacated pursuant to 18 U.S.C. § 3742(f)(1) and (2), this Court vacated the judgment and sentence previously imposed regarding Count Five, and entered an Amended Judgment and Commitment Order *nunc pro tunc* to effectuate a recomputation of Defendant's sentence by the Federal Bureau of Prisons. Am. Judgment, ECF No. 308. On December 28, 2010, Defendant noted an appeal from the order of this Court granting his Amended Judgment. Def.'s Notice of Appeal, ECF No. 311. Defendant's appeal was ultimately dismissed by the D.C. Circuit as untimely filed. *See United States v. Wilson*, 463 F. App'x 1 (D.C. Cir. 2012).

Defendant filed a [310] Motion to Correct/Amend an Illegal Sentence[10] on December 27, 2010, which the Government opposed on January 20, 2011.[11] On April 14, 2011, after explaining that the relief sought did not fall under the scope of Rule 35(a), this Court ordered that Defendant inform the Court whether he wished to withdraw his motion or have the Court recharacterize the motion as having been filed under 28 U.S.C. § 2255. Order, ECF No. 319. On May 26, 2011, Defendant moved to withdraw his Motion to Correct an Illegal Sentence, which the Court granted on May 31, 2011. Def.'s Mot. to Correct/Am., ECF No. 321.

---

[10] Def.'s Mot. to Correct/Am., ECF No. 310. Defendant claimed that the Amended Judgment was entered outside his presence and the presence of counsel, and further, that the Court lacked jurisdiction because the Assistant United States Attorney never took an oath of office.
[11] Govt.'s Opp'n to Def.'s Mot. to Correct/Am., ECF No. 314.

**C. Present Motions to Vacate Sentence Pursuant to 28 U.S.C. § 2255 and to Amend and/or Supplement Pursuant to Fed. R. Civ. P. 15(a) and (c)**

On May 21, 2012, *pro se* Defendant filed this [328] second-filed Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Defendant did not seek a certificate to file this [328] second-filed § 2255 motion. However, because Defendant's second-filed § 2255 motion is his first § 2255 challenge to the current judgment, it does not qualify as a "second or successive" § 2255 motion under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* Govt.'s Opp'n, ECF No. 332, at 10 n.6 (acknowledging that the Government does not believe that Defendant's § 2255 motion qualifies as a successive § 2255 motion under *Magwood v. Patterson*, 561 U.S. 320, 332-33 (2010)). Accordingly, Defendant need not have sought a certificate to file his [328] second-filed § 2255 motion.

In *Magwood,* the Supreme Court held that a state prisoner's federal habeas petition could not be treated as "second" or "successive" under § 2244(b), a provision added through the enactment of the AEDPA, because the petition challenged an amended judgment entered by the state court and not the original judgment that the state prisoner had previously successfully challenged through a prior federal habeas petition. *Magwood*, 561 U.S. 320, 341-342 (2010). The Supreme Court explained that "where . . . there is a 'new judgment intervening between the two habeas petitions,' . . . an application challenging the resulting new judgment is not 'second or successive' at all." *Id.*

On August 29, 2017, Defendant filed his subsequent [351] Motion to Amend and/or Supplement pursuant to Fed. R. Civil P. Rule 15(a) and (c). In this subsequent filing, Defendant presents the affidavit of his former co-defendant—Marcellus Judd—as well as information alleging that the murder weapon was linked to a different murder, in support of Defendant's claim

of "actual innocence." Def's Mot. to Am. and/or Supplement, ECF No. 351.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

However, the remedy set forth by § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). The circumstances under which such a motion will be granted "are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal." *United States v. Burwell*, 160 F. Supp. 3d 301, 308 (D.D.C. 2016). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).The petitioner has the burden of proof to demonstrate his right to such relief by a preponderance of the evidence. *United States v. Basu*, 881 F. Supp. 2d 1, 4 (D.D.C. 2012). A court shall grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

With few exceptions, a prisoner may not raise a claim as part of a collateral attack if that claim could have been raised on direct appeal, unless he can demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted. *Bousley v. United States*, 523 U.S. 614, 622-23 (1998).

However, "[w]here a petitioner raises claims of ineffective assistance of counsel in a § 2255 motion, he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these claims may properly be raised for the first time in a § 2255 motion." *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000) (citation omitted), *aff'd*, 22 F. App'x 3 (D.C. Cir. 2001).

A defendant claiming ineffective assistance of counsel may raise it for the first time as a collateral attack, rather than on direct appeal, but must show (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [him] prejudice." *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citations omitted). For the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential" and defendant must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (internal quotation marks and citation omitted). The Court must consider "counsel's overall performance," *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986), and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. It is the petitioner's burden to show that counsel's errors were "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment. *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

Furthermore, the defendant must meet the second *Strickland* prong and "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. That is, "[t]he defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 669. To find prejudice, the petitioner must show that there is "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks and citation omitted). An ineffective assistance of counsel claim is defeated if the defendant fails to demonstrate either prong.

A Section 2255 petitioner is not automatically entitled to an evidentiary hearing and should not receive one if his allegations are "vague, conclusory, or palpably incredible" rather than "detailed and specific." *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see also United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 915 (1992) ("Only where the § 2255 motion raises 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection' must a hearing be held.") (quoting *Machibroda*, 368 U.S. at 495). A district court may deny a federal inmate's motion for an evidentiary hearing in connection with a Section 2255 motion to vacate when: "(1) the motion is inadequate on its face; (2) the movant's allegations, even if true, do not entitle him to relief; or (3) movant's allegations "need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible." *Reyes v. United States*, 421 F. Supp. 2d 426, 430 (D. Puerto Rico 2006) (quoting *United States v. McGill*, 11 F.3d 223, 225-26 (1st Cir. 1993)); *see United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996) ("A judge need not conduct an evidentiary hearing before denying a petition for relief under § 2255 when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.") (citing 28 U.S.C. § 2255 (1994)), *cert. den.*, 520 U.S. 1131 (1997).

# III. PRELIMINARY ISSUES

## A. Leave to Amend

The Court first addresses the issue of whether Defendant's failure to seek leave to amend his [328] second-filed § 2255 Motion to Vacate, Set Aside, or Correct Sentence warrants a dismissal of Defendant's [351] Motion to Amend. The Court notes that the Government has responded to Defendant's Section 2255 motion, and the Government opposes Defendant's request to amend his second-filed Section 2255 motion for purposes of adding an "actual innocence" claim. Accordingly, Rule 15(a) of the Federal Rules of Civil Procedure requires that Defendant obtain this Court's permission to amend his motion. *United States v. Hicks*, 283 F. 3d 380, 386 (D.C. Cir. 2002); *see United States v. Coughlin*, 251 F. Supp. 3d 212, 218 (D.D.C. 2017) ("Civil pleadings, including § 2255 motions, may be amended or supplemented as provided in the Federal Rule of Civil Procedure 15.")

Pursuant to Rule 15, Defendant may amend his [328] motion "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15 (a)(2). The "court shall freely give leave [to amend] when justice so requires." *Id.*

> Although the grant or denial of leave to amend is committed to the district court's discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as "undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment."

*Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 182 (1962)). "Courts liberally interpret Rule 15(a) to allow amendment unless doing so would not be in the interest of justice." *Shea v. Clinton*, 288 F.R.D. 1, 4 (D.D.C. 2012).

In this case, Defendant filed his Motion to Amend and/or Supplement [relating to his second-filed § 2255 motion] more than five years after service of his second-filed § 2255 motion

and receipt of an initial responsive pleading from the Government, [12]and approximately two years

after the Government provided a response on the merits of Defendant's claims. There is no

allegation that Defendant filed his [351] Motion to Amend and/or Supplement in bad faith or with

a dilatory motive. Nor has there been any determination on the substantive merits of Defendant's

[328] second-filed Motion to Vacate. Moreover, although Defendant never sought leave to amend

his [328] second-filed § 2255 motion, he is proceeding *pro se*. "'[P]ro se litigants are afforded

more latitude than litigants represented by counsel to correct defects in . . . pleadings.'" *Lawrence*

*v. Guthrie*, No. 08-1292 (RMU), 2011 WL 3563109, at *2 (D.D.C. Aug. 11, 2011) (quoting *Moore*

*v. Agency for Int'l. Dev.*, 994 F.2d 874, 876-77 (D.C. Cir. 1993)); *see also Erickson v. Pardus*, 551

U.S. 89, 94 (2007) ("A document filed *pro se* 'is to be liberally construed,' and 'a *pro se* complaint,

however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

by lawyers.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Belton v. Shinseki*, 637 F.

Supp. 2d 20, 23 (D.D.C. 2009) (same); *McFadden v. Washington Metro. Area Transit Auth.*, 168

F. Supp. 3d 100, 105 (D.D.C. 2016) (same). *But see Casares v. Wells Fargo Bank, N.A.*, No. 13-

1633 (ABJ), 2015 WL 13679889, at *1 (D.D.C. May 4, 2015) ("Even *pro se* litigants, however,

must comply with the Federal Rules of Civil Procedure.") (citing *Jarrell v. Tisch*, 656 F. Supp.

237, 239 (D.D.C. 1987)).

"The practice of freely giving leave to amend is thus 'particularly appropriate' where *pro*

*se* litigants are concerned." *Lawrence v. Guthrie*, No. 08-1292 (RMU), 2011 WL 3563109, at *2

(D.D.C. Aug, 11, 2011) (quoting *Kidd v. Howard Univ. Sch. of Law*, No. 06-CV-1853 (RBW),

---

[12] It is unclear whether Defendant's [351] Motion to Amend and/or Supplement pursuant to Fed.
R. Civil P. Rule 15(a) and (c) is intended to replace Defendant's [328] § 2255 Motion to Vacate,
Set Aside, or Correct Sentence or supplement it. Consequently, the Court will treat the
allegations contained in Defendant's [351] Motion to Amend and/or Supplement as supplemental
to the allegations in Defendant's [328] § 2255 Motion to Vacate, Set Aside, or Correct Sentence.

2007 WL 1821159, at *2 (D.D.C. June 25, 2007)). Moreover, no real prejudice to the Government

will result from allowing Defendant to proceed without having sought leave to amend, particularly

as the briefing on both motions has now been completed.  Requiring Defendant to file a motion

seeking leave to amend his § 2255 motion at this point would only cause more delay.  Accordingly,

in the interest of judicial efficiency, the Court will permit the amendment/supplementation of

Defendant's [328] § 2255 Motion to Vacate, Set Aside, or Correct Sentence by Defendant's [351]

Motion to Amend and/or Supplement, and the Court will address the argument set forth in both

motions in this opinion.

**B. Applicability of Pre-AEDPA Procedural Default Rules to Post-AEDPA Second-Filed § 2255 Motions**[13]

The first issue before the Court is the applicability of the procedural default rule, as found

in pre-AEDPA case law, to (1) a second-filed § 2255 motion, (2) filed after the enactment of the

AEDPA, based on (3) the failure to raise a claim in a prior collateral attack of a different judgment.

Effective April 24, 1996, the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132,

110 Stat. 1214 (1996), enacted on April 24, 1996, imposes limitations on second and successive

petitions under § 2255. *United States v. Wilson*, 950 F. Supp. 2d 90, 93 (D.D.C. 2013). Once a

federal court has adjudicated a defendant's § 2255 motion, any "second or successive" motion

under § 2255 must be certified by a panel of the relevant court of appeals to contain

> 1)  newly discovered evidence that, if proven and viewed in light of the evidence
>     as a whole, would be sufficient to establish by clear and convincing evidence

---

[13] On January 9, 2015, Defendant filed a motion for an order directing the Government to respond to the merits of his § 2255 Motion to Vacate, Set Aside, or Correct Sentence. Def.'s Mot. for an Order, ECF No. 338. On June 25, 2015, this Court directed the Government to file a supplemental brief on the issue of whether case law preceding enactment of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) regarding the procedural default rule may be applied to a post-AEDPA second-filed 28 U.S.C. § 2255 motion. Order, ECF No. 340.  Later, the Court directed the Government to brief the merits of Defendant's claims. Order, ECF No. 343.

that no reasonable factfinder would have found the movant guilty of the offense; or

2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

*Id.* (citing 28 U.S.C. § 2255(h)). "Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." *Id.* (quoting 28 U.S.C. § 2244(b)(3)(A)).

Prior to the enactment of the AEDPA, courts addressing § 2255 motions filed by federal prisoners held that if the abuse of writ defense was raised by the Government, the prisoners were procedurally barred from raising claims that could have been, but were not, raised in an earlier § 2255 motion unless the prisoner could show both cause and prejudice. *See United States v. Ortiz*, 136 F.3d 161, 163-64, 165-67 (D.C. Cir. 1998) (distinguishing between the former "abuse of the writ" standard that was applied to a federal prisoner raising claims that could have been raised in his first § 2255 motion, and the new AEDPA standards for filing a second or successive § 2255 motion). The Supreme Court explained:

> The cause and prejudice analysis we have adopted for cases of procedural default applies to an abuse-of-the-writ inquiry in the following manner. When a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's. To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions.

*McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

After the parties' briefing on Defendant's [328] Motion to Vacate was complete, this Court issued an Order wherein it noted that:

> The government in its opposition to the instant § 2255 motion argues that all of Wilson's

14

claims are procedurally barred because Wilson failed to raise the claims in his original § 2255 motion filed on September 29, 2000 and denied by this Court on September 12, 2005. Further, the government asserts that this Court should not proceed to decide Wilson's claims on the merits because "a defendant may not raise a claim in a subsequent petition, that he could have raised in a prior petition 'without demonstrating cause and prejudice.'" The government contends that Wilson has not made the requisite showing of cause and prejudice and, as such, the Court should find that Wilson is procedurally barred from raising the ineffective assistance of counsel claims raised in the instant § 2255 motion under the doctrine of abuse of the writ.

Order, ECF No. 340 at 5.

The Court concluded that it had to "determine whether the Defendant's claims [we]re procedurally barred under the abuse of writ doctrine, as argued by the government, because neither party appear[ed] to argue that Wilson's motion qualifie[d] as a second or successive petition such that the requirements of § 2255(h) would be triggered because of the entry of the Amended Judgment." Order, ECF No. 340, at 6. The issue could be summarized as "whether the pre-AEDPA case law applying the procedural default rule to second-filed § 2255 motions based on the failure to raise a claim in a prior collateral attack is applicable to the instant motion, filed after the enactment of the AEDPA, in light of the AEDPA's statutorily-imposed restrictions on the filing of second and successive § 2255 motions." *Id.* The Court then proceeded to distinguish the cases in support of and against application of a procedural bar, which were cited by the Government and the Defendant, respectively. The Court ordered both parties to file supplemental briefs on this particular issue.

The Government filed its [341] Supplemental Brief, whereby it acknowledged that the D.C. Circuit has not addressed this issue of whether pre-AEDPA procedural default rules as outlined by *United States v. Frady*, 456 U.S. 152, 158 (1982) and *McClesky v. Zant*, 499 U.S. at 493 apply to post-AEDPA second-filed Section 2255 motions, regardless of whether the motions were filed pre-AEDPA or post-AEDPA. The Government noted that this concept was "touched on" by the

Supreme Court in *Magwood v. Patterson*, 561 U.S. 320, 340 (2010) ("[w]e underscore only that procedural-default rules continue to constrain reviews of claims in all applications, whether the applications are second or successive or not.") (internal quotations omitted). This Court has previously distinguished *McClesky*, 499 U.S. at 469-70, on grounds that it set forth the standard for applying the doctrine of abuse of the writ in the context of a state prisoner filing a second federal habeas petition. With regard to *Magwood*, the Court noted as follows:

> However, the [Supreme] Court's discussion of the issue focused on whether a state prisoner is procedurally barred from bringing a claim in a federal habeas petition that he or she has failed to raise at trial, on appeal, or in a habeas proceeding as required under *state law*. Further, the *Magwood* Court expressly did not address the issue of whether the petitioner's claim was procedurally defaulted.

Order, ECF No. 340, at 9 (emphasis in original).

In its Supplemental Brief, the Government relies upon *U.S. v. Barajas-Diaz*, where the Court of Appeals for the 10th Circuit indicated that the pre-AEDPA "cause and prejudice" analysis is still good law. *See U.S. v. Barajas-Diaz*, 313 F.3d 1242, 1247 (10th Cir. 2002) ("[the defendant] begins his argument on the cause and prejudice analysis by contending that AEDPA has superseded *Frady*'s cause and prejudice test. We disagree."). In *Barajas-Diaz*, the Court went on to explain that in the case defendant therein was relying upon [*Daniels v. United States*, 254 F.3d 1180 (10th Cir. 2001)], the court found that "the AEDPA amendment to 28 U.S.C. § 2255, paragraph 8 had eliminated the two-part combination of *Teague* and cause and prejudice traditionally applied to second or successive § 2255 motions" but it "did not purport to declare *Frady*, which applied to *initial* habeas petitions, overruled by the AEDPA amendments." *Id.* (emphasis in original). In contrast, in the instant case, the issue is whether the pre-AEDPA cause and prejudice test applies to Mr. Wilson's second-filed Section 2255 motion, where his § 2255 motion was filed post-AEDPA, based on his failure to raise a claim in a prior collateral attack of a

different judgment.[14]

Mr. Wilson relies upon the procedural history in another Tenth Circuit case, *United States v. Harris*, 593 Fed. App'x 750 (10ᵗʰ Cir. 2014), to provide guidance to the Court. In *Harris*, the defendant sought relief on two ineffective assistance of counsel claims raised in a § 2255 motion. In that case, defendant was sentenced to 360 months in prison for a drug offense; and while his appeal was pending, in 1990, he filed a Section 2255 motion that was denied because of the pending appeal. On direct appeal, the defendant's conviction was affirmed but the case was remanded to the district court for resentencing. The defendant was again sentenced to 360 months and thereafter, in 1997, he filed a second Section 2255 motion, which alleged four claims of ineffective assistance of counsel. The motion was deemed to be a second or successive motion, and authorization to file it was denied by the Circuit Court. Upon consideration of defendant's filing of a Rule 60(b) motion, the district court found that, pursuant to *Magwood*, the defendant's second-filed Section 2255 motion was his first Section 2255 motion after resentencing and therefore was not to be construed as a second or successive motion. The district court considered the merits of the four claims of ineffective assistance of counsel and granted an evidentiary hearing on two of these claims: (1) allegations that trial counsel failed to seek pretrial discovery and (2) allegations of prosecutorial misconduct through knowing presentation of false evidence. Ultimately, the district court determined that defendant had not made a viable ineffective assistance of counsel claim, pursuant to the standard set forth in *Strickland*, insofar as counsel had not performed deficiently nor had the defendant demonstrated that, but for any errors, the outcome of the trial could have been different, but the District court granted a certificate of appealability on

---

[14] In this case, both of Mr. Wilson's Section 2255 motions were filed post-AEDPA. *See* Def.'s Mot. to Vacate Sentence, ECF No. 230; Def.'s Mot. to Vacate Sentence, ECF No. 328.

both claims. The Circuit Court affirmed the district court's ruling that defendant had not met the *Strickland* standard and also denied defendant's request to bring a second or successive 2255 motion (applying the post-AEDPA limitations on a second 2255 motion). Unlike the instant case, in *Harris*, there was no indication of the basis for the Defendant's first-filed Section 2255 motion (*i.e.*, whether it involved prior ineffective assistance of counsel claims) as that first motion was denied based on a pending appeal.

While both parties in this case have attempted to provide guidance to this Court as to whether the pre-AEDPA cause and prejudice standard should apply under the circumstances of this case with regard to a possible procedural bar of Defendant's claims, this issue remains unresolved. This Court notes that procedural default is generally a preliminary issue to be addressed before a federal court's consideration of the merits of a claim. *Lambrix v. Singletary*, 520 U.S. 518, 524 (1997); *see, e.g., Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (reversing the district court's grant of the writ on the merits because no cause or prejudice had been shown to excuse the default). However, "[w]hen relief is due to be denied even if claims are not procedurally barred, [a federal court] can skip over the procedural bar issues[.]" *Loggins v. Thomas*, 654 F. 3d 1204, 1215 (11th Cir. 2011) (string citing cases). Since "cause and prejudice" can excuse a procedurally defaulted claim, *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)), and "prejudice" essentially requires a merits analysis, the court [may] proceed to the merits of claims found to be procedurally defaulted without determining whether the [ ] procedural default is adequate and independent to bar relief in federal court." *Weaver v. Chappell*, Case No. 02-cv-05583, 2016 WL1260822 at *16 (March 31, 2016). After reviewing the supplemental briefing provided by both parties, the Court issued an [343] Order directing the Government to "respond to the merits of the arguments raised in the

Motion to Vacate" and gave Defendant an opportunity to respond. Accordingly, without determining whether Defendant's claims are procedurally barred, this Court will address the merits of Defendant's ineffective assistance of counsel claims where it has determined that relief is due to be denied.

## IV. LEGAL ANALYSIS

### A. Statement of the Defendant's Claims

Defendant claims that his trial counsel failed to:

(1) move to dismiss alternative counts – specifically either count two (18 U.S.C. § 1513(a)(1)(A) or count four (D.C. Code §§ 22-2401, 3202) in the indictment on grounds that each charged an offense related to the single killing of Leroy Copeland Jr;

(2) object to the court sentencing defendant on both counts two and four;

(3) move to dismiss defendant's case for lack of subject matter jurisdiction; and

(4) move to dismiss the indictment pursuant to Fed. R. Crim. P. 6(d).

Govt. Second Opp'n to Mot. to Vacate, ECF No. 348 at 1 (page citations to Def's Mot. to Vacate omitted).

Defendant claims that his appellate counsel was ineffective for failing to challenge the trial court's:

(1) denial of defendant's right to the counsel of his choice by refusing to appoint counsel who was neither a member of the Federal Defendant service nor certified on the Federal Criminal Justice Act ("CJA") panel;

(2) suppression of evidence that the firearm used to murder Copeland was used in an unrelated murder case before defendant's trial;

(3) subject matter jurisdiction over his case; and

(4) allowing the presence of Assistant United States Attorney Robert Mueller in the grand jury.

Govt. Second Opp'n to Mot. to Vacate, ECF No. 348, at 2 (page citations to Def's Mot. to Vacate

omitted).

Each of these claims will be discussed in turn.

### B. Claims of Ineffective Assistance of Trial Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged standard for evaluating claims of ineffective assistance of counsel. The first prong requires the defendant to show that his attorney's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687; *United States v. Abney*, 812 F.3d. 1079, 1086 (D.C. Cir. 2016) (same). The defendant must show that, in the context of the circumstances at the time of the conduct, counsel's "representation amounted to incompetence under "prevailing professional norms, "not whether it deviated from best practices or more common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

The second prong requires that even if counsel's representation was deficient, the defendant must affirmatively prove prejudice that is "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland* at 687, 693. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Cullen v. Pinholster*, 131 S. Ct. at 1403 (quoting Strickland, 466 U.S. at 686). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim," *Strickland*, 466 U.S. at 700, and thus, the reviewing court need not "address both components" if defendant fails to show one. *Id.* at 697.

### 1. Failure to Dismiss Alternative Counts and Object to Sentencing

Defendant argues that his trial counsel was ineffective for failing to move to dismiss either

count two (killing a witness, 18 U.S.C. §§ 1512(a)(1)(A)) or count [six][15] (first-degree murder while armed, D.C. Code § 22-2401, 3202) of the indictment because both offenses related to the single killing of Leroy Copeland, Jr. and for failure to object to the trial court sentencing Defendant on both counts. Def's Mot. to Vacate, ECF No. 328, at 3-7, 23. The Government explains that because counts two and four require different elements and they "punish[ ] different criminal acts," the indictment was not multiplicitous. Govt's Second Opp'n, ECF No. 348, at 8; *see United States v. Brown*, 503 F. Supp. 2d 217, 220 (D.D.C. 2007) (Kollar-Kotelly, J.) (noting that an indictment is multiplicitous if a single offense is alleged in a number of counts, which increases a defendant's exposure to sanctions). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each [count] requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Furthermore, the two statutes at issue in counts two and four punished different acts:

D.C. Code §§ 22-2401, 3202 punish[d] first degree premeditated murder while armed. United States Code [18 U.S.C.] § 1512(a)(1)(A) punishe[d] a killing (or attempted killing) of another person  with intent to prevent the attendance or testimony of that person   in   an  official proceeding. United States Code § 1513(a)(1)(B) punishes a killing (or attempted killing) of any person with intent to retaliate against that person for providing a law enforcement officer with information relating to the commission of any offense.  The D.C. Code section requires premeditation, an element not present in either of the federal offenses.  The federal offenses require an intent to prevent and an intent to retaliate respectively — elements not found in each other or in the crime under the D.C. Code.

*United States v. Wilson*, 160 F.3d 732, 750 n.20 (D.C. Cir. 1998).

Because these two counts punished difference offenses and required different elements, a motion by counsel to dismiss either count on grounds of multiplicity would have failed, and for the same reasons, an objection by counsel to the two counts would have been rejected. Defendant

---

[15] Defendant references counts two and four but discusses the charges under counts two and six.

cannot prevail on a claim that counsel was ineffective for failing to make an objection that lacks merit. *United States v. Sayan*, 968 F.2d 55, 65 (D.C. Cir. 1992). Accordingly, there is no prejudice to Defendant based on counsel's failure to move to dismiss alternative counts in the indictment and failure to object to these two counts at sentencing. Accordingly, Defendant's claims of ineffective assistance of counsel with regard to these alternative counts are denied.

### 2. Failure to Object to an Alleged Lack of Subject Matter Jurisdiction

Defendant alleges that his counsel was ineffective for failing to move to dismiss the indictment on grounds of lack of subject matter jurisdiction over the D.C. Code violation. Def.'s Mot. to Vacate, ECF No. 328, at 14-15. The United States District Court for the District of Columbia has jurisdiction over "[a]ny offense under any law applicable exclusively to the District of Columbia which offense is joined in the same information or indictment with any Federal offense." *United States v. Malenya*, 736 F.3d 554, 556-57 (D.C. Cir. 2013) (citing District of Columbia Reorganization Act of 1970, Pub. L. No. 91-358, title I, § 111, 84 Stat. 477, 478) (codified at D.C. Code § 11-502). The indictment in the instant case included both federal offenses and D.C. Code violations and thus, the district court had jurisdiction over the D.C. Code violations. Accordingly, there is no indication that Defendant has been prejudiced by counsel's failure to object to the trial court's jurisdiction over the D.C. Code offense, and Defendant's claim of ineffective assistance of counsel with regard to subject matter jurisdiction is denied. *See Sayan*, 968 F. 2d at 65 ("[A] lawyer is not ineffective when he fails to file a meritless motion.") (internal quotation marks and citation omitted).

### 3. Failure to Dismiss Indictment pursuant to Fed. R. Crim. P. 6(d)

Defendant asserts that his counsel was ineffective for failing to move to dismiss the indictment on grounds of a Fed. R. Crim. P. 6(d) violation. Def.'s Mot. to Vacate, ECF No. 328,

at 17-21. Rule 6(d) states that while a grand jury is in session, only "attorneys for the government, the witness being questioned, interpreters when needed, and a court reporter or operator of a recording device" may be present. Pursuant to Rule 6(d)(2), only jurors or an interpreter, if needed, may be permitted in the grand jury room while the grand jury is deliberating.

Mr. Wilson argues upon "information and belief" that former Assistant United States Attorney Robert Mueller was not authorized to be in the presence of the grand jury because he was not an attorney, and furthermore, he was not entitled to be present during deliberations. Defendant proffers that Mr. Mueller was with the U.S. Attorney's Office ("USAO") for the District of Columbia from May 14, 1995 to August 24, 1998, and that he would have been sworn in by the United States Attorney for the District of Columbia or his designee. Govt's Second Opp'n, ECF No. 348, at 13 & n.1. Defendant has proffered no detailed or specific factual allegations in support of his claim that Mr. Mueller was not an attorney, and nor could he. Similarly, Defendant's claim that Mr. Mueller was with the grand jury during their vote and deliberations is based on vague and conclusory allegations by the Defendant that fail to establish that Mr. Mueller violated Fed. R. Crim. P. 6(d)(2). Accordingly, Defendant has failed to establish that he could have prevailed on a motion to dismiss the indictment on these grounds if his trial counsel had filed such a motion. *See generally Feliciano-Rodriguez v. United States*, 115 F. Supp.3d 206 (D. Puerto Rico 2015) (noting that a defendant cannot prevail on a claim that the absence of a motion to dismiss the indictment prejudiced him, in the absence of a showing of perjury or inflammatory statements to "goad the grand jurors into indicting petitioner, statements without which petitioner arguably would not have been indicted."). Defendant's claims that his trial counsel should have dismissed the indictment are based upon a faulty premise, and this alleged failure does not give rise to a claim for ineffective assistance of counsel. Accordingly, none of the Defendant's claims that trial counsel provided

ineffective assistance of counsel are meritorious.

### C. Claims of Ineffective Assistance of Counsel by Appellate Counsel

Defendant moves this Court further to vacate his conviction and sentence on grounds of ineffective assistance of appellate counsel, and as with claims against trial counsel, the Court applies the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); *Payne v. Stansberry*, 760 F. 3d 10, 13 (D.C. Cir. 2014). With regard to claims against appellate counsel, the Defendant must "first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal." *Smith v. Robbins*, 528 U.S. 259, 263 (2000). "Appellate counsel need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Peete v. United States*, 942 F. Supp. 2d 51, 55 (D.D.C. 2013) (internal quotation marks and citations omitted). The Defendant has the burden of also demonstrating prejudice; *i.e.*, that but for his counsel's error, he would have prevailed on his appeal. A failure to make "the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700

### 1. The Trial Court's Refusal to Appoint a Non-CJA Certified Counsel

Defendant asserts that his appellate counsel should have challenged the trial court's refusal to appoint a specific attorney to represent him where that counsel was not certified on the Federal CJA panel or a member of the Federal Defender Service. Def.'s Mot. to Vacate, ECF No. 328, at 8-11, 24. The Government submits that Defendant "cannot establish that the trial court abused her discretion in appointing a member of the Federal CJA panel, [and thus, ] defendant cannot establish prejudice as is necessary to prevail on this claim." Gov't Second Opp'n, ECF No. 348, at 18.

In this case, attorney Gary Siddell was appointed — on April 18, 1996 — to represent Mr. Wilson in a case in the Superior Court for the District of Columbia charging the Defendant with

first-degree murder while armed. According to the Government, on September 19, 1996, an indictment was issued in United District Court for the District of Columbia charging Defendant with offenses related to the murder of Leroy Copeland. On September 27, 1996, attorneys Gary Siddell and Leonard Birdsong appeared before the trial court (Judge Norma Holloway Johnson). Mr. Siddell noted that he was not a member of the District Court's CJA panel, but the Court wanted an attorney for Defendant who was a member of the panel or the Federal Defender Service. Gov't Second Opp'n, ECF No. 348, at 18-19.

"[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim . . . is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Furthermore, "[a]n indigent criminal defendant who seeks court-appointed counsel does not have a constitutional right to choose his attorney; 'he has only the right to effective representation.'" *United States v. Bostick*, 791 F.3d 127, 156-57 (D.C. Cir. 2015) (citing *United States v. Graham*, 91 F. 3d 213, 217 (D.C. Cir. 1996)). Courts are charged with utilizing "their supervisory powers to take greater precautions to ensure that counsel in serious criminal cases are qualified." *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984); *see United States v. Basham*, 561 F.3d 302. 324-25 (4th Cir. 2009) (noting that "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts") (quoting dicta from *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989), *cert den.*, 560 U.S. 938 (2010).

In this case, the trial court exercised her discretion to appoint counsel who was certified under the District Court CJA rather than permitting Defendant to proceed with counsel who was not certified and whose competence was unknown to the Court. Defendant has not demonstrated

that the trial court abused her discretion, and accordingly, his claim of ineffective assistance of counsel — for failure to raise the issue that he did not receive his counsel of choice — fails.

### 2. The Government's Alleged Suppression of Evidence

Defendant argues that he was prejudiced in the absence of an appellate challenge to the suppression of the Government's evidence that before Mr. Copeland was murdered, the firearm used in the murder was used in an unrelated homicide. Def.'s Mot. to Vacate, ECF No. 328, at 11-14, 26. Defendant does not elaborate on how such evidence could have assisted in his defense or how the suppression of this evidence prejudiced him. The evidence against the Defendant (which is discussed in more detail in Section E below) was found by the D.C. Circuit to be "nonconflicting, nonambiguous, and overwhelming," and there were four eyewitnesses to the shooting. *Wilson*, 160 F.3d at 741 n.8. In light of the weight of the evidence of Defendant's guilt and the speculative value of evidence that the gun was previously used, the Court finds that Defendant's claim of ineffective assistance of counsel with regard to this alleged suppression of evidence issue is without merit.

### 3. The Absence of a Challenge to the Trial Court's Subject Matter Jurisdiction

As previously noted in Section IV. B. 2 herein, the trial court had jurisdiction over violation of the D.C. Code. *See Malenya*, 736 F.3d at 556-57. Accordingly, there is no merit to the Defendant's claim that his appellate counsel should have challenged jurisdiction on this grounds, and his claim of ineffective assistance of counsel fails.

### 4. The Absence of a Challenge to Robert Mueller's Participation with the Grand Jury

The issue of Mr. Mueller's participation during grand jury proceedings has already been discussed by this Court in Section IV. B. 3, where this Court concluded that Defendant had not shown that counsel's failure to raise this non-meritorious claim prejudiced the Defendant in any

way. Defendant's claim that appellate counsel did not raise this issue does not satisfy the standard for demonstrating ineffective assistance of counsel; and accordingly, Defendant's claim of ineffective assistance of counsel shall be denied.

### D. Evidentiary Hearing Not Necessary

Defendant Louis Wilson requests an evidentiary hearing on his Section 2255 Motion. Whether or not to hold a hearing is a decision "committed to the district court's discretion, particularly when, . . . , the judge who is considering the § 2255 motion also presided over the proceeding in which the petitioner claims to have been prejudiced."[16] *United States v. Orleans-Lindsay*, 572 F. Supp. 2d 144, 166 (D.D.C. 2008) (Kollar-Kotelly, J.) (citation omitted). The party seeking a hearing in a Section 2255 proceeding carries a fairly high burden of demonstrating need for a such a hearing, and the decision whether to grant one is "committed to the district court's discretion." *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992). To warrant a hearing, the petitioner's Section 2255 motion must "raise "detailed and specific" factual allegations whose resolution requires information outside of the record[.]" *Id.* (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). As explained herein, Mr. Wilson does not meet the threshold of establishing "detailed and specific" factual allegations which would warrant an evidentiary hearing instead, Defendant's ineffective assistance of counsel claims are vague and speculative.

Furthermore, a district court may deny a Section 2255 motion without a hearing when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."

---

[16] The Court is mindful that because another judge presided over the trial and sentencing, a decision to deny Petitioner's request for an evidentiary hearing may be reviewed under a less deferential standard *See Morrison*, 98 F. 3d at 625 ("[A] district judge's decision not to hold an evidentiary hearing before denying a § 2255 motion is generally respected as a sound exercise of discretion when the judge denying the § 2255 also presided over the trail in which the petitioner's claims to be prejudiced.) Accordingly, this Court has taken care to scrutinize the parties' filings.

28 U.S.C. § 2255(b). Based on a review of the parties' pleadings and the entire record in this criminal proceeding, the Court finds that there is no need for an evidentiary hearing on the Defendant's Section 2255 motion.[17] As made clear herein, Mr. Wilson's claims are speculative, and they do not demonstrate the required showing of prejudice to the defendant. *See United States v. Morrison*, 98 F.3d 619, 626 (D.C. Cir. 1996); *United States v. Sayan*, 968 F. 2d 55, 66 (D.C. Cir. 1992) ("[W]hen a section 2255 motion involves ineffective assistance of counsel claims, no hearing is necessary if the alleged deficiencies of counsel did not prejudice the defendant."). Accordingly, no evidentiary hearing is warranted in this case, and the Court's findings herein are based on the parties' pleadings and the record in this case.

### E. Defendant's Actual Innocence Claim

In his [351] Motion to Amend and/or Supplement pursuant to Fed. R. Civil P. Rule 15(a) and (c), Defendant alleges that he is "actually innocent." The Supreme Court has recognized that "a prisoner 'otherwise subject to defenses of abusive or successive use of the writ [of habeas corpus] may have his federal constitutional claim considered on the merits if he makes a proper showing of actual innocence.'" *McQuiggins v. Perkins*, 569 U.S. 383, 392 (2013) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief.[18] "This rule, or fundamental

---

[17] Mr. Edwards also requested that counsel be appointed to represent him at any evidentiary hearing but in light of this Court's ruling, that issue is moot.

[18] The Government notes that the D.C. Circuit has "not addressed the issue of whether an untimely assertion of an 'actual innocence' exception to excuse a procedural default in a Section 2255 filing can 'relate back' to the original, timely filing." Govt.'s Resp., ECF No. 360, at 7, n. 6; *see Mayle v. Felix*, 544 U.S. 644 (2005) (relation back). *But see Penney v. United States*, 870 F.3d 459, 463 (6th Cir. 2017) (actual innocence claim considered on the merits even though made through an untimely Rule 60(b) motion and an untimely motion to amend); *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) (untimely actual innocence claim properly heard).

miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* (quoting *Herrera*, 506 U.S. at 404).

The Supreme Court has "applied the miscarriage of justice exception to overcome various procedural defaults," including "'abusive' petitions asserting in a second petition claims that could have been raised in a first petition . . . ." *Id.* at 393-94. Moreover, "a plea of actual innocence can overcome AEDPA's one-year statute of limitations," as "[s]ensitivity to the injustice of incarcerating an innocent individual should not abate" when AEDPA's statute of limitations is the impediment. *Id.* at 392, 393. Thus, "[f]ocusing on the merits of a petitioner's actual innocence claim . . . rather than treating timeliness as a threshold inquiry, is tuned to the rationale underlying the miscarriage of justice exception—i.e., ensuring 'that federal constitutional errors do not result in the incarceration of innocent persons.'" *Id.* at 385 (quoting *Herrera*, 506 U.S. at 404). "Unjustifiable delay on a habeas petitioner's part" shall count "not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown." *Id.* at 387. Accordingly, in light of the fact that briefing on Defendant's motion regarding his claim of actual innocence has been completed, and in order to complete the record in this case, this Court shall address Defendant's actual innocence claim as set forth in his [351] Motion to Amend his § 2255 Motion to Vacate.

To establish actual innocence, "petitioner must demonstrate that in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted); *see also United*

---

In any case, the merits of Defendant's ineffective assistance of counsel claims have been addressed by this Court in the prior sections of this Memorandum Opinion.

*States v. Baxter*, 761 F.3d 17, 26 (D.C. Cir. 2014) (quoting *Bousley*); *United States v. Caso*, 723 F.3d 215, 218-19 (D.C. Cir. 2013) (same). "A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992). The exception is designed to excuse procedural barriers to relief in only a "narrow class" of "extraordinary instances when a constitutional violation has caused the conviction of one innocent of the crime." *McClesky*, 499 U.S. at 494. "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386-87 (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)); *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met). As discussed in *McQuiggin*, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. 569 U.S. at 387 (citing *Schlup*, 513 U.S. at 332).

To support his assertion of "actual innocence," Defendant proffers a purported affidavit by his former co-defendant—Marcellus Judd—as well as the fact that the murder weapon was linked to a subsequent murder. *See* Def's Mot. to Am. and/or Supplement, ECF No. 351. The Judd Affidavit disputes that Defendant was the shooter. *See* Affidavit of Marcellus Judd, Ex. A, ECF No. 351 (attached to Def's Mot. to Am. and/or Supplement). Defendant has not met the demanding, seldom-met standard of demonstrating sufficient evidence of his "actual innocence" to warrant a review of his procedurally defaulted claims. In light of the fact that Judd is now deceased, the year that Judd allegedly signed the affidavit is not legible, and the Affidavit was not submitted until after Judd's death, the Judd affidavit is of a suspect genesis. Moreover, because more than twenty years have passed since Defendant committed the murder for which he was

charged and sentenced, the timing of not only the Judd Affidavit but also of the filing of the [351] motion to amend and/or supplement are significant factors that weigh against the reliability of the evidence. *See McQuiggin*, 569 U.S. at 387.

Further, the potential impact of the Judd Affidavit must be weighed against the overwhelming evidence of Defendant's guilt. In light of all the evidence, Defendant cannot establish that it is "more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623. The Court of Appeals summarized all of the evidence against Defendant and his brother as follows:

> The Lorton tape . . . established their motive to kill and to retaliate; James [Wilson]'s attorney testified that Ralph heard portions of the tape; [Kirk] Thomas testified that on the same night Ralph enlisted his help in finding [Leroy] Copeland; [Steve] Hamilton saw Ralph and Louis armed at 5th and O Streets, N.W., looking for Copeland around noon on the day of the murder; and in a telephone conversation after the murder Ralph told James's son [Keith] that his father's trial "looked alright now." In addition, four eyewitnesses saw Louis shoot Copeland.

*United States v. Wilson*, 160 F.3d 732, 741 n. 8 (1998).

As to the shooter's identity, the Judd Affidavit posits that Judd "never looked the shooter in the face," that Judd "didn't see who the shooter was," but "knew that it was not Louis Wilson," and that "[a]lthough [Judd] did not get a good look at the shooter's face, [he knew] that it was not Louis Wilson." Ex. A, ECF No. 351. As to the veracity of witness Steve Hamilton's testimony, Judd asserts that "Steve Hamilton lied. I never said that, and I did not tell Louis Wilson that Leroy was out that night." *Id.*

Evidence of the firearm being linked to a subsequent murder likewise does not support Defendant's actual innocence claim. Defendant fails to explain how such evidence linking the firearm that killed Leroy Copeland on March 25, 1996, to the subsequent murder of Pedro Morales on December 23, 1996, would prevent any reasonable juror from finding Defendant guilty beyond

a reasonable doubt. Moreover, the inculpating evidence was "nonconflicting, nonambiguous, and overwhelming." *See Wilson*, 160 F.3d at 741 n. 8. In sum, the evidence included the following:

1) On March 20, 1996, six days before James Wilson's trial date, James Wilson's attorney met with Ralph Wilson and Maxine Wilson, identified Leroy Copeland by name as a key witness against James Wilson, and played them portions of the Lorton tape recording in which James Wilson discussed "the Post Office robbery" and referred to his family as "the 'Wilson Gang'" (3:108-114, 120-25; 7:100-01).[19] This testimony established a threefold motive for Defendant and Ralph Wilson to kill Copeland: to protect their brother, James Wilson, from Copeland's upcoming trial testimony; to protect themselves from someone who had information about their own criminal activity generally; and to retaliate against James Wilson's betrayer.

2) On the same evening that Ralph Wilson heard the Lorton tape, he told Kirk Thomas that he was looking for Copeland because Copeland was to be a witness against James Wilson and "Peabody;" asked Thomas what Copeland looked like; and sought Thomas's help in finding Copeland (6:39, 46-47, 51, 54-56).

3) Around noon on March 25, 1996, the day of the murder, Steve Hamilton saw Defendant and Ralph Wilson riding around in a car with guns looking for Copeland (5:157-61).

4) Minutes before the murder, Thomas told Marcellus Judd that Copeland was in the area (5:27, 33-34; 6:63-65).

5) Consistent testimony of three eyewitnesses, Tim Carrington, Glen Young, and Thomas, all of whom saw Defendant shoot Copeland (4:18, 38, 55-56; 5:29-30, 34-37; 6:22-23, 91-92).

6) The tape recording of the telephone conversation that occurred an hour and a half after the murder, in which Ralph Wilson told his nephew, Keith, that James Wilson's trial "look[ed] alright now" for reasons he could not discuss over the telephone (7:122-25; 7:132-33).

7) The day after the murder, Judd told both Young and Hamilton that he had "went and got" Defendant on the evening of the murder and informed him that Copeland was in the area (5:39, 42-43; 5:168-70, 177-78).

8) Defendant's April 17, 1996 statement to Detective Will that, on the evening of the murder, he left 30 New York Avenue shortly after 6:30 p.m. and did not return until forty-five minutes to an hour later (9:7-9). This statement eviscerated Defendant's alibi defense.

---

[19] References to the trial transcript are by volume number and page. For example, Volume III at pages 108 to 114 is cited as "3:108-114."

Govt.'s Resp. to Def's Mot. to Am. and/or Supplement at 11, ECF No. 360.

Given all this evidence, there is no reasonable likelihood that, had Judd testified at trial consistently with his purported affidavit, or had evidence about the gun being linked to a subsequent murder been introduced, the verdict would have been different for Mr. Louis Wilson. Accordingly, Defendant has not established "actual innocence."

## V. CONCLUSION

For the foregoing reasons, the Court shall GRANT Defendant's [351] Motion to Amend and/or Supplement and DENY his [328] Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255.

Furthermore, no Certificate of Appealability shall issue from this Court. To the extent the Defendant intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22.

An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE